UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN DECAN,

       Plaintiff,                                      Hon. Richard Alan Enslen

v.                                                     Case No. 1:06-CV-502

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age at the time of the ALJ's decision. (Tr. 16). She successfully completed high school and worked previously as a cashier and administrative assistant. (Tr. 16, 22, 121-24).

Plaintiff applied for benefits on August 21, 2003, alleging that she had been disabled since February 12, 2002, due to a "brain infection." (Tr. 60-62, 89). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-59). On June 28, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff, Plaintiff's friend, Plaintiff's husband, and vocational expert, Paul Delmar. (Tr. 467-507). In a written decision dated December 27, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 15-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

Beginning in early 2000, Plaintiff began experiencing chronic headaches, double vision, facial droop, an inability to concentrate, and difficulty speaking. (Tr. 168-213, 235, 291-98). In April 2001, Plaintiff participated in an MRI examination, the results of which revealed "multiple

enhancing lesions in the brainstem and inferior right hypothalamus with adjacent meningeal enhancement." (Tr. 430). In May 2001, Plaintiff was diagnosed as suffering from chronic histoplasma meningitis with brain stem histoplasmomas, for which "antifungal therapy" was prescribed. (Tr. 214-17, 427-28). Plaintiff was also diagnosed with depression. (Tr. 214-17).

On June 13, 2001, Plaintiff was examined by Dr. Larry Junck. (Tr. 430-31). Plaintiff reported that she recently completed receiving a series of Amphotericin-B treatments. *Id.* Plaintiff reported that her double vision was "somewhat better" and that she only experienced double vision "when she looks straight ahead and looks to the right." (Tr. 430). Plaintiff also reported that her left facial droop had "completely resolved." *Id.* The results of a "general examination" were "unremarkable." (Tr. 431). An examination of Plaintiff's vision revealed "a right eye inward deviation" and, furthermore, that her eyes were "not aligned in primary gaze." The doctor also reported that Plaintiff experienced double vision "on rightward gaze and in primary gaze with the images appearing side-by-side." The results of motor, reflex, and coordination testing were unremarkable. *Id.*

On June 14, 2001, Plaintiff was examined by Dr. James Riddell, a physician with the University of Michigan Infectious Disease Clinic. (Tr. 427-29). Plaintiff reported that she was no longer experiencing headaches, but was still experiencing double vision. (Tr. 427). The results of a physical examination were unremarkable. (Tr. 428). Dr. Riddell reported that he was "quite encouraged" by Plaintiff's progress. The doctor prescribed for Plaintiff an additional two weeks of Amphotericin-B treatments. *Id.*

On July 23, 2001, Plaintiff was examined by Dr. Riddell. (Tr. 419-20). Plaintiff reported that she "continued to improve." (Tr. 419). She reported that she experienced "a few

minor" headaches after completing her Amphotericin-B treatments, but that she had not suffered a headache "over the last couple of weeks." With respect to her vision, Plaintiff reported that she was experiencing "only some minor double vision with extreme right gaze." *Id.* Dr. Riddell instructed Plaintiff to "continue with the high dose oral fluconazole" which she began after completing her Amphotericin-B treatments. (Tr. 420). The doctor indicated that Plaintiff would need to remain on this regimen "for the next 9 months at minimum," after which she would need to participate in a lumbar puncture procedure and MRI "to assess her further response to therapy." Plaintiff reported that she felt she could return to work "in early August based on her improved symptoms." *Id.*

On October 25, 2001, Plaintiff was examined by Dr. Riddell. (Tr. 417-18). The doctor reported that Plaintiff "has responded quite dramatically to therapy with almost complete resolution of [her] cranial nerve abnormalities." (Tr. 417). Plaintiff reported that she was no longer experiencing "visual disturbances" or headaches. She also noted that she had returned to work on a part-time basis. *Id.*

On February 14, 2002, Plaintiff was examined by Dr. Daniel Fett. (Tr. 218-19). Plaintiff reported that she was experiencing "stiffness and discomfort" in both her shoulders. (Tr. 218). She reported that her symptoms were exacerbated by reaching forward or performing twisting motions with her upper extremities. *Id.* Dr. Fett diagnosed Plaintiff with bilateral adhesive capsulitis with limited range of motion in both shoulders. (Tr. 218-19). On February 20, 2002, Dr. Fett performed a surgical manipulation procedure on both of Plaintiff's shoulders. (Tr. 220-21). Following this surgery, Plaintiff participated in physical therapy from February 21, 2002, through March 29, 2002. (Tr. 225-32).

5

On May 8, 2002, Plaintiff participated in an MRI examination of her brain the results of which revealed "increased T2 and FLAIR signal abnormality seen in the right side of the brainstem, left middle cerebellar peduncle with a possible lesion in the pons." (Tr. 409). After reviewing the results of this examination, Dr. Angela Morriss reported that "it appears that the really active areas of infection have resolved" and that "what is left is scarring." (Tr. 398). The doctor characterized this as "a very encouraging finding." *Id.*

On May 9, 2002, Plaintiff was examined by Dr. Riddell. (Tr. 411-12). Plaintiff reported that she was experiencing a "continued mild left facial droop" with "constant" fasciculations on the left side of her face, but "otherwise has done quite well." (Tr. 411). Plaintiff reported that she was no longer experiencing headaches and was tolerating her medication "quite well" without complications. *Id.* Dr. Riddell instructed Plaintiff to continue her present medication regimen for "at least another six months to a year." (Tr. 412).

On September 11, 2002, Plaintiff was examined by Dr. Susan Hickenbottom. (Tr. 384-86). Plaintiff reported that she was experiencing left-sided double vision as well as "visual disturbance" which she described as "a jiggling of her vision that makes it difficult to concentrate and read." (Tr. 384). Plaintiff also reported that she had recently begun to experience "episodes of confusion" which she characterized as "a sudden sensation of disorientation with retained consciousness." (Tr. 384-85). Plaintiff reported that these episodes lasted "for several seconds" after which she was "only mildly confused." (Tr. 385). According to Plaintiff, she was also experiencing "almost constant left facial twitching primarily involving her lower face but with some involvement of her eye." The results of a "general and physical examination" were unremarkable, but an examination of Plaintiff's vision revealed several difficulties. *Id.*

That same day, Plaintiff was also examined by Dr. Riddell. (Tr. 381-82). As part of this examination, Plaintiff participated in an MRI examination, the results of which revealed "no progression of the brainstem lesions which appear to largely at this point consist of scar from her prior infection." (Tr. 381). The doctor reported that there was no evidence that Plaintiff had developed any new cranial nerve abnormalities and that "the majority of her symptoms at this point are a sequalae which have persisted." (Tr. 381-82). Dr. Riddell further observed that Plaintiff's symptoms prevented her from working. (Tr. 382).

On October 8, 2002, Plaintiff was examined by Dr. Reid Taylor. (Tr. 250-53). Plaintiff reported that she was depressed and experiencing uncontrolled and hysterical sobbing "for no reason." (Tr. 250). Plaintiff also reported that she was experiencing forgetfulness and difficulty concentrating. *Id.* Plaintiff was diagnosed with depression secondary to her medical condition. (Tr. 253). Following a November 1, 2002 examination, Dr. Taylor reported that Plaintiff was "not as tearful" and exhibited "more control" of her emotions, but was nonetheless "still depressed." (Tr. 255).

On October 9, 2002, Plaintiff was examined by Dr. Wayne Cornblath. (Tr. 379-80). Plaintiff reported that for "about six months. . .things she has looked at move up and down." (Tr. 379). Plaintiff also reported experiencing double vision "on extreme left gaze." An examination revealed that Plaintiff was suffering from oculopalatal myoclonus, "a brainstem disorder that is seen months to years after a brainstem injury." The doctor informed Plaintiff that her vision difficulties were "likely to persist." *Id.*

On September 29, 2003, Drs. Riddell, Morriss, and Hickenbottom authored a letter regarding Plaintiff's condition. (Tr. 367). With respect to Plaintiff's present difficulties, the doctors indicated the following:

> Approximately one year following the diagnosis, Mrs. Decan began to experience one of the possible delayed side effects of a mass in the brainstem called oculopalatal myoclonus. This is a disorder that is characterized by rapid, brief movements of the eyes, face and palate. Because the pathway also goes to the part of the brain called the cerebellum, there can also be significant difficulty with balance, leading to a sensation of dizziness and occasional falls. This problem is subtle to the observer, but can make concentrating on reading, computer screens or anything that requires prolonged visual fixation nearly impossible for the patient. The reason this occurred was because the infection was so far advanced, there was actually scar tissue that formed, creating a permanent mass in the brainstem. This abnormality can still be appreciated on Mrs. Decan's last MRI.
>
> Mrs. Decan has also suffered significant impairment to her cognitive function, specifically in the spheres of short term memory and concentration. This is certainly a result of the injury sustained to her cortex from the prolonged infection of the central nervous system. It is not likely that she will return entirely to her baseline function. Mrs. Decan has made every possible effort in her rehabilitation, including keeping all follow-up appointments, excellent compliance with medications, as well as multiple trials of medications to improve her underlying condition. At this point she is unable to perform full time employment as a result of her symptoms. Unfortunately, there are not any reliable medical therapies still available to treat the symptoms of this chronic condition.

*Id.*

On December 5, 2003, Plaintiff was examined by Dennis Mulder, Ed.D. (Tr. 325-28). Plaintiff reported that she was experiencing short-term memory loss, fatigue, and difficulty concentrating. (Tr. 325). She also reported experiencing "unsteady" vision with "bouncing images in her visual field." The doctor observed "twitching in [Plaintiff's] face, eyes and throat." Plaintiff

reported that she was depressed, withdrawn, and isolated. She further reported that she felt "hopeless, useless and worthless" because of her inability to "do what she used to do." *Id.* Plaintiff reported that she was presently working 12 hours weekly. (Tr. 326). She indicated that she tried to work 20 hours per week, but was unable to do so. *Id.*

Plaintiff was "cooperative," but "depressed" and "tearful." (Tr. 327). The results of a mental status examination were otherwise unremarkable. (Tr. 327-28). Plaintiff was diagnosed with major depressive disorder (recurrent, moderate) and her GAF score was rated as 55. (Tr. 328). Dr. Mulder concluded that the "potential for [Plaintiff] becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is guarded pending medical resolution." *Id.*

On December 29, 2003, William Schirado, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 334-47). Determining that Plaintiff suffered from major depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 335-43). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 344). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, experienced moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Schirado also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr.

329-31). Plaintiff's abilities were characterized as "moderately limited" in seven categories. With respect to the remaining 13 categories, the doctor reported that Plaintiff was "not significantly limited" or that there existed "no evidence of limitation." *Id.*

On June 1, 2005, Jeanne Kops authored a letter regarding Plaintiff's condition. (Tr. 155-56). Kops reported that she knew and worked with Plaintiff prior to her onset of meningitis. (Tr. 155). Kops reported that prior to suffering meningitis, Plaintiff "could manage a large workload including multiple projects." While Plaintiff returned to work after contracting meningitis, she struggled to perform her tasks. Plaintiff's position was later eliminated, after which she and Kops maintained contact. Plaintiff later began working as a part-time cashier in the pharmacy owned by Kops' husband. (Tr. 155, 472-73). As Kops reported, "it was then that I discovered first-hand the extent of [Plaintiff's] struggles and limitations." (Tr. 155). Specifically, Kops noted that Plaintiff experienced short-term memory impairment, fatigue, an inability to concentrate, and difficulty learning new tasks. (Tr. 155-56). Kops further observed that Plaintiff "struggles with depression." (Tr. 156).

At the administrative hearing Plaintiff testified that she was unable to perform full-time work activities due to fatigue and an inability to concentrate. (Tr. 481-82). Plaintiff reported that while she no longer experiences significant episodes of double vision, her vision is constantly "shaky" as if she were watching "a movie taken by someone with Parkinson's disease, you know, where it's really shaky." (Tr. 482-83). Plaintiff also reported that she "sometimes" loses her balance when walking. (Tr. 491-92).

# ANALYSIS OF THE ALJ'S DECISION

## A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) status-post histoplasma meningitis; and (2) affective disorder. (Tr. 17). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff was able to perform her past relevant work as a cashier and

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

administrative assistant, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 22).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff "has no exertional limitations," but "should avoid working around moving machinery and at dangerous heights." (Tr. 21). The ALJ also determined that Plaintiff could perform work involving simple, repetitive tasks. With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild restrictions in the activities of daily living, mild difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence or pace, and has experienced no episodes of decompensation of extended duration. *Id.* The ALJ determined that Plaintiff, despite her impairments, retained the ability to perform her past relevant work as a

cashier and administrative assistant. (Tr. 22). Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.*

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

As detailed above, Plaintiff suffered a very serious case of chronic histoplasma meningitis. Plaintiff's illness was characterized by her treating physicians as a "prolonged infection of the central nervous system" which resulted in a "permanent mass" in Plaintiff's brainstem. (Tr. 367). While doctors were able to eventually treat Plaintiff's infection, she continues to suffer serious secondary effects of her illness. As her treating physicians reported, Plaintiff presently suffers from oculopalatal myoclonus, a disorder which causes "significant difficulty with balance, leading to a sensation of dizziness and occasional falls." This disorder also makes "concentrating on reading, computer screens or anything that requires prolonged visual fixation nearly impossible." Plaintiff's treating physicians further reported that Plaintiff "also suffered significant impairment to her cognitive function, specifically in the spheres of short term memory and concentration." Plaintiff's

treating physicians concluded, therefore, that as a result of her impairments Plaintiff "is unable to perform full time employment." *Id.*

The conclusions of Plaintiff's treating physicians are consistent with the results of their various examinations of Plaintiff. In fact, the only "medical evidence" which supports the ALJ's conclusions is the reports of Agency physicians who never actually examined Plaintiff, but instead simply reviewed her medical history. The Court notes that the record fails to indicate whether these examining physicians possess the necessary expertise in the treatment of infectious disease to properly evaluate Plaintiff's condition or medical history.

In support of his decision, the ALJ also relied on daily activity reports completed by Plaintiff. (Tr. 138-45, 157-67). The Court fails to discern how these reports support the ALJ's decision. While Plaintiff's disclosures reveal that she is capable of certain limited activities, these reports make clear that she nonetheless suffers from the very cognitive and concentration difficulties and limitations identified by her treating physicians. In sum, while Plaintiff may be able to perform certain limited work activities for brief periods of time, she is simply unable to perform work activities on a full-time basis. *Id.* This conclusion is further supported by the observations of Plaintiff's friends, family, and employer. (Tr. 129-37, 155-56, 495-503).

The record also contains uncontradicted evidence that Plaintiff suffers from fatigue, vision difficulties, an inability to lift even 20 pounds, and an inability to perform above-the-shoulder activities with either of her upper extremities. (Tr. 155-56, 218-32, 325-26, 367, 379-80, 481-83, 492-93). Despite this overwhelming evidence that Plaintiff experiences significant limitations in her ability to perform work activities, the ALJ concluded that Plaintiff "has no exertional limitations." This conclusion is not supported by substantial evidence.

Rather, the medical evidence establishes that Plaintiff suffers from impairments which can reasonably be expected to produce the pain and limitations from which she suffers. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). Nonetheless, the ALJ rejected Plaintiff's subjective allegations stating that such were inconsistent with the record. The ALJ's conclusion in this regard is not supported by substantial evidence.

As discussed above, the medical evidence in this matter is entirely consistent with Plaintiff's subjective allegations. Plaintiff's reported activities are likewise consistent with her assertion that she cannot perform work activities on a full-time basis. As previously noted, Plaintiff's reported activities reveal that while she can perform certain limited activities for brief periods of time she cannot perform work activities on a full-time basis.

The ALJ observed no behavior contradicting Plaintiff's allegations, nor have any of Plaintiff's care providers called into question the veracity of Plaintiff's subjective allegations. *See Felisky v. Bowen*, 35 F.3d 1027, 1040-41 (6th Cir. 1994) (substantial evidence did not exist to support the ALJ's decision to discredit the claimant's testimony where the claimant's testimony was consistent with information provided to her physicians, none of whom expressed doubts regarding her symptoms or indicated that she exaggerated her pain). Indeed, it appears she has been a model patient. While the ALJ has arguably identified evidence supporting his position, Plaintiff is not required to establish the absence of any and all factors adverse to his position. *Id.* at 1041 (it is not necessary that every single factor favor the claimant before finding that the ALJ's decision is not supported by substantial evidence).

In sum, the evidence reveals that Plaintiff is unable to perform work activity on a regular and continuing basis (i.e., 8 hours a day, 5 days a week). While Plaintiff retains the ability

to perform certain limiteded activities, such is not inconsistent with the finding that she is disabled. *See Leos v. Comm'r of Soc. Sec.*, 1996 WL 659463 at *2 (6th Cir. 1996) (the fact that a claimant performed limited nonstrenuous activities does not preclude a finding that she experiences pain to a disabling degree); *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a "total basket case"). Accordingly, for the reasons herein discussed, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC (as articulated by the ALJ) she could still perform her past relevant work as a cashier and administrative assistant. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that Plaintiff can still perform her past relevant work is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

### 2. Evidence of Plaintiff's disability is compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's

decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). As discussed above, the medical evidence reveals that Plaintiff suffers from impairments which can reasonably be expected to impair her to the extent alleged. Moreover, the medical evidence is consistent with Plaintiff's subjective allegations. In sum,

for the reasons discussed herein, the Court concludes that the evidence of Plaintiff's disability is compelling.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  August 15, 2007                                  /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge